BETHLEHEM-FAIRFIELD SHIPYARD, INC., ET AL. *v.* NETTIE ROSENTHAL

[No. 22, October Term, 1945]

*Decided December 18, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert E. Coughlin, Jr.,* for the appellants.

*Max R. Israelson* for the appellee.

COLLINS, J., delivered the opinion of the Court.

On July 25, 1944, Isadore Rosenthal, the husband of the claimant, Nettie Rosenthal, appellee here, was killed in an accident while employed by the Bethlehem-Fairfield Shipyard, Inc., in the course of his employment. He left surviving him his wife, the appellee in this case, and two children.

After her husband's death, she filed a claim with the State Industrial Accident Commission who found that she was wholly dependent upon her husband, the deceased, for support. From that finding the employer and insurer appealed to the Superior Court of Baltimore City where the jury affirmed the finding of the State Industrial Accident Commission and to the issue "was the claimant, Nettie Rosenthal, wholly dependent upon Isadore Rosenthal, deceased," the jury answered "Yes." From a judgment in favor of the claimant, Nettie Rosenthal, for costs of suit after the Court affirmed the decision of the State Industrial Accident Commission, the appellants appeal here.

Appellants admit and concede that the claimant was partially dependent upon her deceased husband, but not totally dependent. The case comes to this Court on exceptions by the appellants to certain testimony and on the refusal of the trial court to grant the employer's and insurer's A prayer, which instructed the jury that the uncontradicted testimony in the case was that the claimant was employed at the death of her husband and earning wages averaging $30 per week, and that therefore as a matter of law she was not wholly dependent upon her husband at the time of his death, and therefore the answer of the jury to the issue shall be "No."

It is provided by Flack's Annotated Code, 1943 Supp., Article 101, Section 48:

"The following persons shall be presumed to be wholly dependent for support upon a deceased employee: A wife or invalid husband ('invalid' meaning one physically or mentally incapacitated from earning), * * *.

"In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in death of such empleyee, * * *."

Appellee makes no contention here that the presumption that she was wholly dependent for support upon her deceased husband is a conclusive presumption. This admission seems to be borne out in the case of *Harvey v. George J. Roche & Sons,* 148 Md. 363, 129 A. 359, where the Court did not treat this presumption as conclusive in passing on a widow's claim for total dependency. In that case the witnesses agreed that at the time of the injury and death, the husband and the wife had been living apart for a year or more, but there was some conflict as to the reason for the separation. It was said in that case at pages 368 and 369 of 148 Md., at page 361 of 129 A., "It is provided by Section 43 of the Act that a wife who has deserted the employee, her husband, for more than one year prior to the time of injury, shall not be a beneficiary. But the testimony of the wife here tended to show desertion by the husband, and there

has been no question of law presented upon any objection to the wife's claim on the ground of desertion by her. There was a conflict of evidence on the claim of actual contributions to her support by the husband, but as the wife testified to contributions averaging $50 a month up to the time of the husband's death, and that except for that she had no income or support other than board paid by two women who lived in the house, and as this was in part corroborated by other witnesses produced on the wife's behalf, it is our opinion that there was evidence legally sufficient for a finding of entire dependency by the wife, * * *." See also case of *State Industrial Accident Commission v. Downton*, 135 Md. 412, 415, 109 A. 63.

We have been referred to many out-of-state cases by the appellants. Except for the fact that most of these cases reiterate the familiar doctrine, admitted by appellants, that the question of dependency is one primarily of fact to be decided in every case upon the facts of that case, those cases are not helpful here. In many of those citeed, the question was whether or not a father, mother, sister, or brother was dependent upon the deceased. These are not helpful on account of the presumptions under the Maryland law. In others the husband and wife had been separated either by one deserting the other, or by the fact that the wife lived in a foreign country. The Workmen's Compensation statutes, upon which many of these cases are based, contain provisions different from those contained in the Maryland statute. In the case of *Morris v. Yough Coal & Supply Co.*, 266 Pa. 216, 109 A. 914, at page 915, the Court said, "If the finding of dependency is based on any evidence or on an inference fairly deducible therefrom, the award must be sustained, though we might differ from the conclusion thus reached."

Judge Burke in the case of *Grant v. Kotwall*, 133 Md. 573, 577, 105 A. 758, 760, points out that there is no definition of dependency contained in the Workmen's Compensation Act of this State. In that case he quoted

from *In re Carroll,* 65 Ind. App. 146, 116 N. E. 844, the following: " 'Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent—one who relies on another for the reasonable necessities of life'." It was said in the case of *State Industrial Accident Commission v. Downton, supra,* 135 Md. 412, at pages 415 and 416, 109 A. 63, at page 65, *"In re Carroll,* 65 Ind. App. (146), 116 N. E. 844; *Parson v. Murphy,* 101 Neb. 542; *Sweet v. Sherwood Ice Co.,* 40 R. I. (203), 100 A. 316, and in the Nebraska and Rhode Island cases, it is held that the cases 'do not baldly hold that the legal obligation determines the question of dependency, but that such legal obligation must be coupled with a reasonable probability that such obligation will be fulfilled.' The same view will be found in *Blanton v. Wheeler & Howes Co.,* 91 Conn. 226, in which last case also the English adjudications will be found collected."

It was said further in the case of *Meyler v. Mayor and City Council,* 179 Md. 211, at page 217, 17 A. 2d 762, at page 765, "But mere ability to earn a livelihood does not necessarily preclude a person from being a dependent. The test of dependency, as a general rule, is not whether a claimant was capable of supporting himself without the earnings of the workman, but whether he did in fact rely upon such earnings for his livelihood, in whole or in part, under circumstances indicating an intent on the part of the workman to furnish such support. *Gonzales v. Chino Copper Co.,* 29 N. M. 228, 222 P. 903, 905."

Chief Judge Marbury in the opinion in the case of *Larkin v. Smith,* May 4, 1944, 183 Md. 274, 37 A. 2d 340, at page 343, adopted the rule as laid down in *Bloomington-Bedford Stone Co. v. Phillips,* 65 Ind. App. 189, 116 N. E. 850, " 'Total dependency exists where the dependent subsists entirely on the earnings of the workman; but in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous

services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated'."

In that case, where the person claiming total dependency partially owned the place in which she lived, this Court further said at pages 282 of 183 Md. and 343 and 344 of 37 A. 2d, "A proper interpretation of the meaning of the statute can be found in the words of the Supreme Court of Minnesota in the case of *State ex rel. Splady v. District Court,* 128 Minn. 338, 151 N. W. 123, 124. 'It may certainly be argued with some force that one who owns his home, or for whom others perform friendly services, is not, technically speaking, "wholly dependent" upon the cash received from the wages of the worker of the family. Nor is one who receives help from a charitable organization, or from neighbors. But we cannot suppose that the Legislature intended that such a person should be considered only a "partial dependent." Giving the act a reasonable and liberal construction, our conclusion is that the trial court was justified in finding that plaintiffs were wholly dependent upon the deceased for their support.' The trial court, in our opinion, was entirely correct in refusing to grant the prayer No. 1 of the employer and insurer, and in his statement to the jury that he did not think the Legislature intended such an illiberal construction of the word 'wholly' as contended for by the appellants." This Court has therefore adopted a different view from that followed by the Massachusetts Court in the case of *In re MacDonald (In re Employers' Liability Assurance Corporation),* 229 Mass. 454, 118 N. E. 949, L. R. A. 1918F, 493, relied on by the appellant here, where the Court held that a wife, who owned some ground with an eight-room house on it in which the family lived, was not totally dependent upon her deceased husband for support.

The deceased and the claimant in the case at bar were married in 1922, and the claimant had never worked until May, 1943, having been supported during her entire married life by her husband. The son moved to Baltimore in May, 1942; the husband, on July 1, 1942; and the wife joined her husband in Baltimore on August 8, 1942. After her son went into the Navy and about June, 1943, the appellee took a position with the United States Chemical Company for a period of about ten weeks and in August, 1943, she accepted employment with the Bethlehem-Fairfield Shipyard, Inc., appellant, and was employed by them on the date of her husband's death. Her average weekly wage during the period of her employment with the appellant corporation was $30. Her husband was earning on the average of $47.45 a week at the time of his death. Before his employment with the appellant corporation, he was making between $30 and $40 a week as a fruit peddler in New Jersey. She stated that when she came to Baltimore, she had no intention of working and that the only reason she took employment was because her boy was in the Navy and she was worried and wanted to occupy her mind. Her daughter was in school. She had no relatives in Baltimore, and she only intended to work until her son came home, because her husband made a living for her. She says that the bank account was first opened in her daughter's name, and later her name was put on it, and she deposited her husband's checks in that account. From this account the family expenses, including clothing, were paid. Her earnings were placed in this same account.

It is provided by Flack's Annotated Code, 1939, Article 101, Section 70: "In all Court proceedings under or pursuant to this Article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." The Commission having found in favor of the claimant, under this provision of the Code, the burden of proof was upon the appellants, and the appellants by asking that their A prayer be granted, are asking the Court to instruct a

verdict in favor of the parties who must carry the burden of proof. The testimony in the case is that of the appellee called as a witness by the appellants and that of the appellee testifying in her own behalf. Appellants admit that, generally speaking, questions of dependency are questions of fact and should be submitted to a jury. Appellants claim, however, that there are some cases such as the one at bar where the evidence is not conflicting, in which there is no dispute and in such cases the question becomes one of law. In other words, they contend in the instant case that the testimony presents a question of law and not one of fact.

Appellants rely strongly on the case of *Harrison v. Central Construction Company*, 136 Md. 170, 108 A. 874, where there was an agreed statement of facts and where it was said at page 180 of 135 Md., at page 877 of 108 A.: "Under the facts and circumstances of those cases the court was merely announcing the general rule that all facts and inferences from facts adduced in support of the claimant's case must be submitted to the jury. The question as to whether an injury arose out of or in the course of the employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact, but when the facts have been ascertained and agreed upon by the parties, or are undisputed, and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the court."

In speaking of the case of *Harrison v. Central Construction Company, supra,* where there was an agreed statement of facts, this Court said, through Judge Urner, in the case of *Todd v. Easton Furniture Company*, 147 Md. 352, at pages 355 and 356, 128 A. 42, at page 43: "The case as presented by agreement admitted of no dispute as to any inferences of fact, and simply required a decision as to whether a particular rule of law should be applied. The present case was not submitted to the court upon an agreed statement of facts. It was tried before a jury upon the testimony of witnesses, and, while

the evidence was uncontradicted, it admitted of an inference of fact opposed to that embodied in the instruction by which the verdict of the jury was controlled." It has been said many times by this Court that where facts are proved without contradiction, but where there is ground of dispute as to any material inference of fact, the case should be submitted to the jury. *Todd v. Easton Furniture Company, supra; Clement v. Minning,* 157 Md. 200, 204, 145 A. 485; *Baltimore Dry Docks & Shipbuilding Co. v. Hoffman,* 142 Md. 73, 120 A. 227; *States Eng. Co. v. Harris,* 157 Md. 487, 492, 146 A. 392; *Moore v. Clarke,* 171 Md. 39, 46, 187 A. 887, 107 A. L. R. 924.

In the case at bar the facts are not disputed but there is a serious dispute as to whether those facts infer that the wife was totally dependent upon her husband for support at the time of the accident. *Alexander v. Tingle,* 181 Md. 464, 469, 30 A. 2d 737. The uncontradicted evidence shows that this woman accepted this employment for the period her son was in the Navy as she wanted to occupy her mind and not to worry. It is a well known fact that strenuous efforts were made during the war period to enlist women in war work. The Workmen's Compensation Act is essentially social legislation and the provisions thereof are to be liberally construed. It must be interpreted to effectuate its general purpose and not strictly construed. Code, Art. 101, Sec. 78; *Larkin v. Smith, supra.* Where there is conflict in the Workmen's Compensation law, questions of construction should be resolved in favor of the claimant. *Lisowsky v. White,* 177 Md. 377, 382, 9 A. 2d 599, 601; *Kraushar v. Cummins Construction Corporation,* 180 Md. 486, 497, 25 A. 2d 439.

We are not called upon here to decide whether the appellee was totally dependent upon her husband for support. Our duty is simply to decide whether the jury should have been given the opportunity to determine that question upon the evidence presented. *Todd v. Easton Furniture Company,* supra, 147 Md. 359, 128 A. 42; *Krell v. Maryland Drydock Company,* 184 Md. 428,

41 A. 2d 502. The deceased here had the legal obligation to support his wife (Code, Article 27, Section 89) and the fact that he had supported her for over twenty years certainly amounts to reasonable probability that such obligation would be fulfilled. *State Industrial Accident Commission v. Downton*, 135 Md. 412, 109 A. 63, *supra*. Appellants admit that the claimant was partially dependent upon her husband for support.

Appellants in this case are faced with two presumptions, (1) that the decision made by the commission is correct, and (2) that the wife is presumed to be totally dependent for support upon the deceased, and are asking this Court to direct a verdict in favor of the parties who carry the burden of proof against those presumptions. We must therefore conclude that the undisputed facts in the case at bar could be interpreted by the jury as indicating that the claimant's work was only temporary or occasional, and that her intention was to depend solely on her husband's income in the future as she had in the past. So finding, the jury could decide that there was total dependency within the meaning of the Act. This Court cannot find as a matter of law that the claimant was not wholly dependent and therefore the trial judge was correct in refusing the employer's and insurer's A prayer by which the appellants sought to have the jury instructed that the uncontradicted testimony in the case was that the claimant was employed at the death of her husband and earning wages averaging $30 per week, and that therefore as a matter of law she was not wholly dependent upon her husband at the time of his death and therefore the answer of the jury to the issue should be "No." The Court was correct in refusing this prayer. Thirty-six exceptions were taken by appellants to the evidence offered in this case.

We believe that the Court was correct in admitting this testimony. These exceptions relate to the claimant's previous employment with the Chemical Company; whether her husband was employed during their entire married life; whether during that time he supported his

wife; why she came to Baltimore; what she intended to do about working when she came to Baltimore; what her husband's earnings were from the time she came to Baltimore until she went to work for Bethlehem-Fairfield in July or August, 1943; whether she was able to meet all expenses from her husband's earnings; what was being done with the money earned by her son between the time he came to Baltimore and the time he went into the Navy; for what purpose he gave the money to his mother after she went to work; what was done with her earnings; that her son was stationed at Bainbridge and Quantico and then went into the Navy and was sent overseas in January or February, 1944; that after she went to work she gave her son $10 or $15 a week; that her son came to Baltimore every two weeks; what was done with the balance of her earnings until the time of her husband's death; from what funds the household expenses and her support were taken; that none of her support was taken from her earnings but came out of her husband's money; that up until the time of her husband's death she did not receive any allotment or payment from her son or from the Government; that she deposited all of her husband's money in excess of what it took to run the house; that she saved between $20 and $25 a week out of her husband's earnings; that she took employment because her son went into the Navy and she was worried and wanted to occupy her mind; that she had no other relatives in Baltimore; that when she accepted work at the Chemical Company she took the work on account of being worried about her son and only intended to keep her job until he came home because her husband was making a living for her. All of this evidence was properly admitted to show the factual condition of the family as to wages and employment, and all of which reflected on the question as to whether the wife was wholly dependent upon her husband for support at the time of the injury.

As we find no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*

MARKELL, J., filed the following dissenting opinion:

In some jurisdictions, in some circumstances (*e. g.,* when husband and wife live together) the presumption of total dependency is a conclusive presumption, *i. e.,* not a presumption at all, but a rule of substantive law, that the widow is entitled to compensation regardless of dependency. In Maryland the presumption is a *prima facie* presumption, *i. e.,* a true presumption, which affects only the burden of proof, whether (a) in the primary sense of the risk of non-persuasion or (b) in the secondary sense of the burden of going forward.

In the instant case presumptions (of total dependency and of correctness of the Commission's decision) and burden of proof play no real part. They require us to assume the truth of the claimant's testimony and of any permissible inferences favorable to her. Regardless of presumptions, we could do no less. All the evidence comes from the claimant herself. Not only is her testimony uncontradicted, but the facts are essentially undisputed. Whether on the undisputed facts she was totally dependent is a pure question of law. *Moore v. Clarke,* 171 Md. 39, 46, 187 A. 887, 107 A. L. R. 924; *Albright v. Pennsylvania Railroad Company,* 183 Md. 421, 37 A. 2d 870; *Heaps et al. v. Cobb,* 185 Md. 372, 45 A. 2d 73.

Undisputed facts are that: The husband came from New Jersey to Baltimore on July 1, 1942; the wife followed on August 8, 1942. In New Jersey "he made $30 sometimes $40 sometimes less a week." Out of that she would save $15—or more. From the time the husband came to Baltimore until July or August, 1943, his average weekly earnings were about $47. On July 25, 1944, when he was killed, they were about the same; previously for a time he worked seven days a week and made about $60. The wife worked for Bethlehem-Fairfield from August, 1943, till his death, and previously for another employer for about ten weeks. On July 25, 1944, her average weekly wage was $30. She then had about $3,800 in bank, including $800 her son had given

her to hold for him when he went into the service. She never worked before the War, and did not intend to continue to work after her son got back.

Total or partial dependency is a question of degree. On the principle *de minimis* inconsequential temporary resources of the dependent are disregarded. *Larkin v. Smith,* 183 Md. 274, 37 A. 2d 340. A year is a small part of recorded history, and $30 a week is an inconsequential part of the national income or expenditure. But in comparison with the husband's earnings of $47 a week, or with compensation of $18 a week, on a question whether the total compensation shall be $3,000 or $5,000, $30 a week for a year up to the time of his death, with $3,000 in bank, is neither temporary nor inconsequential. The fact that she saved all her earnings is not evidence of dependency, but rather of comparative independence. To say that she was wholly dependent upon her husband at the time of his death, I think, does violence to the statute and to the English language.

Judge HENDERSON authorizes me to say that he concurs in this dissent.