### KNIBB ET AL. *v.* JACKSON

[No. 187, October Term, 1955.]

294

*Decided June 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*C. Damer McKenrick* and *W. Albert Menchine,* with whom was *Henry W. Schultheis* on the brief, for the appellants.

*W. Lee Harrison,* with whom was *Richard C. Murray* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The employer and the insurer appeal from a judgment entered on a jury's affirmance of the finding of the State Industrial Accident Commission that a minor brother was

wholly dependent upon his deceased older brother. The appellants urge that the trial court erred in refusing their motion for an instruction, as a matter of law, that dependency was only partial and not total, and that the court's charge is erroneous as given, and inadequate.

The testimony shows that Mrs. Emma Jackson and her sons, Joseph, thirteen, and James, seventeen and a half, at the time of James' injury, lived together on upper Park Heights Avenue in Baltimore County, where the family had lived for fifteen years. The husband lived elsewhere and for some years had contributed nothing to his wife and children. Mrs. Jackson had supported the family until James went to work just about the time he became sixteen. Mrs. Jackson was employed at a weekly wage of $37.00 and James received $35.00. Mrs. Jackson's take home pay varied from $32.00 most weeks to $28.00 or $29.00 the one week in the month she paid for Blue Cross protection. From his earnings of $35.00 a week James gave his mother a total of $22.00—$7.00 for his board, $5.00 for herself, and $10.00 for Joseph, the younger brother. The parties differ sharply as to whether or not the net $32.00 a week Mrs. Jackson earned and the $22.00 a week that James contributed to her, were pooled in a single fund and used for the benefit of all three of the family, or whether the $10.00 a week that James gave his mother was used entirely for Joseph's benefit and constituted his only consequential source of support. There is testimony which would permit a finding either way. Mrs. Jackson testified that the money that was given her by James for Joseph was for Joseph's support, saying that from it: "I bought his clothes, I sent him to school and I seen that he had proper food." She said also that the $10.00 a week was not used for any other purpose, only for Joseph, and that "I clothed and fed him and bought him shoes with the $10.00." She testified that no one other than James contributed any support for Joseph.

On the other hand, there was testimony which showed that Mrs. Jackson was buying the house in which the family lived, that she paid the interest on the mortgage, and the

taxes, and furnished the Blue Cross medical protection, as well as the weekly payments on the automobile. She claimed Joseph as a dependent on her income tax return. She testified that the family food bill was some $20.00 a week. James gave $7.00 a week as his share for board. She also said that from the $10.00 she gave Joseph fifty cents a day for his lunch at school. The appellants argue that it is inescapable from her testimony that the cost of Joseph's share of the food was approximately $7.00 a week and that the fifty cents a day school lunch money added up to another $2.50 a week, which, together with occasional spending money which Mrs. Jackson testified she gave Joseph from the $10.00, used up the weekly donation from James, and that all his other needs must have been, and were, furnished by his mother. They point, too, to Mrs. Jackson's response to the question whether the $50.00 or $54.00 a week she had available from her own earnings and James' contribution were not all utilized "in the maintenance and support of yourself and James and Joseph," which was: "Well, we all three lived together; we all ate together."

We think the case is one which was properly submitted to the jury to determine whether the Industrial Accident Commission was right in deciding there was total dependency. In *Brooks v. Bethlehem Steel Co.,* 199 Md. 29, this Court found as a matter of law that two children, one of whom lived with her grandmother and the other with her mother, were not totally dependent upon their father, who regularly had sent them each $5.00 a week, and had given them spending money and clothing from time to time. The Court said that on the undisputed facts they were dependent upon the grandmother and the mother, respectively, and never had been deprived of the rights of total dependents. In the case before us, if the parts of the testimony and the inferences from it, stressed by the appellants, were established as the facts, the case would be difficult, if not impossible, to distinguish from the *Brooks Case.* In contrast, in *Superior Builders, Inc. v. Brown,* 208 Md. 539, where the mother made $25.00 a week which she testified was all spent for lodging and food,

for her own bare maintenance, and her brother sent $25.00 a week for the support of the three children, and there was testimony that the children would have been sent to an orphanage if this contribution had not been made, it was held that it was properly a jury question whether or not the children were dependent on the uncle. This Court has refused to put a narrow construction on the meaning of the statute as to total dependency. At a time when the law raised a presumption that a wife was dependent on her husband, we refused to disturb a finding of total dependency where the wife earned $30.00 a week while the husband earned $47.45 —*Bethlehem-Fairfield Shipyard v. Rosenthal*, 185 Md. 416. Again, we affirmed a finding that a son was totally dependent on his father, although the mother had been the sole support of the family when for a year the father was, by his own labor, building a house for the family, and although at the time of his death she was still working and making some contribution to the family expenses—*Washington Suburban Sanitary Commission v. O'Donnell*, 208 Md. 370. In the case before us the question is a close one. The majority of the Court feels that dependency should not be decided as a matter of law and that the case properly went to the jury on the issue of total dependency.

We think, however, that the court's instructions, to which the appellants duly and specifically excepted, were likely to have misled the jury. The court charged the jury as to the *prima facie* correctness of the finding of the State Industrial Accident Commission and the burden of persuasion borne by the appellants in attempting to convince the jury that the Commission was wrong. The jury then was instructed that in making their decision as to whether or not the claimant was wholly dependent on the brother for his support, they should bear in mind that "* * * 'total dependency exists where the dependent subsists entirely on the earnings of the workmen, legal or moral duty to support is not necessary; but in applying this rule courts have not deprived claimants of the rights of total dependents when otherwise entitled thereto, on account of temporary gratuitous services ren-

dered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated. There is another terminology frequently used and quoted, "that the individual has no consequential source or means of maintenance other than the earnings of the workmen".' " The appellants' exception to this part of the court's charge was on the ground that there is no evidence whatever of temporary gratuitous services rendered by others, or occasional financial assistance received from other sources, or any minor considerations or benefits received by the claimant. The appellants further excepted to the failure of the court to instruct the jury that if it found that the earnings of James and the earnings of the mother, never totalling less than $50.00 a week, "were pooled for the common support and maintenance of the three members of the household, as of the date of this injury, that in such event the jury must find that the dependency of the claimant, Joseph Jackson, is a partial dependency and not a case wherein Joseph Jackson is wholly dependent upon the deceased worker, James Jackson." We think that the appellants were right as to both exceptions. The language of the court as to temporary or gratuitous services was taken bodily from the case of *Larkin v. Smith,* 183 Md. 274, and there the facts were entirely different. There it was shown that the only source of livelihood or maintenance of the claimant, other than the $18.00 a week given her by her son, was occasional money from the sale of eggs from seven hens and a meal now and then from a restaurant where she formerly worked, plus an interest in the house in which she lived. The language quoted by the court also has been used in other cases, such as *Bethlehem-Fairfield Shipyard v. Rosenthal, supra.* In *Brooks v. Bethlehem Steel Co.,* 199 Md. 29, 34, *supra,* Judge Markell, speaking for the Court, noted that the claimants depended upon the statement from the *Larkin Case* used verbatim by the trial court in his charge in this case and then, referring to the *Larkin* and *Rosenthal Cases,* said: "In any aspect the cases cited are not applicable to the facts in

the instant case. The children are not, on account of temporary services or occasional assistance or other minor considerations, 'deprived of the rights of total dependents, when otherwise entitled thereto'. On the undisputed facts they were dependent primarily on the grandmother and mother respectively, and never were entitled to the rights of total dependents." Certainly, in any aspect of the case before us, there was nothing temporary or occasional in the contribution made to Joseph by the mother. She had supported the family long before James went to work and she supported Joseph after James was injured, in part, at least. During the time James was working, she provided shelter, which included the home and, presumably, heat, when it was needed, as well as medical protection and the family transportation. In addition, depending on which way the testimony is read as to the use of the $10.00, she either provided all of the clothing and other wants except food, or all or part of the food. In *Havre de Grace Fireworks Co. v. Howe,* 206 Md. 158, 166, where total dependency was excluded as a matter of law, Judge Delaplaine pointed out that the orphanage in which the children lived "* * * provided, not only shelter, but also food, clothing, and education", and that the father only "occasionally gave the children some clothing and spending money." In the *Brooks Case,* it was said that in 1947 "* * * questions of dependency, in whole or in part, in all cases, were made questions of fact, construed by this court to mean the fact of receipt of pecuniary support, whether in money, services or otherwise in money's worth." There was testimony in the instant case that permitted a finding that Mrs. Jackson contributed in whole or in part three of the four items of shelter, food, clothing and education and that her contributions were pecuniary support to Joseph, in money, services or money's worth, and were consequential, and neither gratuitous, temporary nor occasional.

The statement from the *Larkin Case,* incorporated by the trial court in his charge, is entirely correct as an abstract statement of the law. We have had occasion before to note that correct abstract statements of law may be very mislead-

ing if they are used as an instruction in a case where the facts are such that the statement has little application or relevance. As we have seen, the Court made this observation of the *Larkin* statement in relation to the facts of the *Brooks Case,* facts not essentially dissimilar to those in this case. In *Rabinovitz v. Kilner,* 206 Md. 455, we pointed out that although the language which the trial court reads to a jury may be unassailable as an abstract statement of the law, it may be small nourishment to a jury attempting to apply that general law to the facts in the case before it. We think that the instruction of the court as to the temporary or occasional aspects of assistance received by Joseph from his mother was erroneous and misleading under the facts of this case.

The appellees say that the court made no error in refusing to give the additional instructions requested by the appellants, because a finding of the State Industrial Accident Commission, unappealed from, was that Mrs. Jackson was partially dependent upon James and, therefore, Joseph could not be found to be partially dependent on Mrs. Jackson. We think that the contention of the appellees is not sound. In *States Engineering Co. v. Harris,* 157 Md. 487, a father was found to be dependent upon his deceased son who, at the time of his death, was living with his father and stepmother. The earnings of the father and the son were all given to the stepmother, and with the exception of $5.00 or $6.00 a week which were returned to the son, were used for family expenses. It was held that the fact that the contributions of the son enabled the father to support the stepmother better than he otherwise could have done was to be considered in determining the dependency of the father on the son. Here, we think it could have been inferred by the jury that the contributions of James helped Mrs. Jackson to contribute to Joseph's support more easily and on a better scale than if the contributions had not been made, and that there is nothing necessarily inconsistent in Mrs. Jackson and Joseph both being partially dependent on James. We find, therefore, that the court should have instructed the jury, as the appellants specifically requested, on the question of the pooling

of the family funds and the use of the pool for the support of all of the family. The judgment must be reversed for the failure to modify the instructions given and the refusal to add to the instructions as requested.

> *Judgment reversed, with costs; and the case remanded for further proceedings.*