THE JAMES GIBBONS COMPANY ET AL. *v.*
SHIRLEY HESS

[No. 254, September Term, 1979.]

*Decided November 13, 1979.*

The cause was argued before MELVIN, LISS and WEANT, JJ.

*R. Roger Drechsler,* with whom were *Lord, Whip, Coughlan & Green, P.A.* on the brief, for appellants.

*Andrew Kahn,* with whom was *Jerome Blum* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Grady Garland, an employee of the James F. Gibbons Company, the appellant herein, sustained an accidental injury on December 16, 1976 arising out of the course of his employment which resulted in his death. Shirley Hess filed a claim for dependency benefits on behalf of Angela A. and Grady Scott Garland, appellees, who are the illegitimate children of Mrs. Hess and Mr. Garland. After a hearing, the Workmen's Compensation Commission filed an order in which it found that Garland's death was the result of an accidental injury arising out of the course of his employment. The Commission also concluded, however, that the decedent left no dependents, thereby denying the children's claim for compensation benefits.

Mrs. Hess filed an appeal from the order of the Workmen's Compensation Commission in the Baltimore City Court where issues raised as to the nature and extent of dependency were submitted to a jury. At the close of the claimants' case, the appellant's motion for a directed verdict was denied. The jury, at the conclusion of the trial, found that the claimants were wholly dependent upon the deceased. The trial court after a hearing, denied appellant's motion for a judgment n.o.v. or a new trial, and appellant promptly filed a notice of appeal to this Court.

The issue raised by this appeal is:

Whether the Baltimore City Court erred in denying the employer and insurer's motions for a

directed verdict and allowing to stand the jury's verdict that the claimants were wholly dependent upon the deceased at the time of his accidental injury and death.

To a substantial extent, the facts in the case are undisputed. Shirley Hess and the deceased, Grady Garland, were never married, but they were the parents of two children, Angela, born on July 20, 1968, and Grady Scott, born on June 22, 1975. These two children, Mrs. Hess, and Mrs. Hess's four other children from a previous marriage lived with the deceased from 1967 to 1975. In September of 1975, after an argument between Mrs. Hess and Mr. Garland, Mr. Garland left the home to live with his sister. It is undisputed that from September of 1975 until Garland's death on December 16, 1976 the parties did not live together.

The evidence presented at trial showed that Shirley Hess and Grady Garland entered into a paternity agreement in September of 1975 by which Garland agreed to pay the sum of $15.45 per week for the support of each of the children, a total payment of $138.27 per month. A decree was entered evidencing this agreement. Mrs. Hess was then receiving a grant from the Department of Social Services in the amount of $308.00 for the support of the members of her family. As a condition for the continuation of her Social Services grant, Mrs. Hess was required to sign a "form 80" allowing the agency to receive support payments on her behalf, the payments to come out of the weekly payments to be made by the deceased pursuant to the paternity decree. The evidence also indicated that during the period of the deceased's separation from his children he would visit them two to three times a week, and on those occasions Mr. Garland and Mrs. Hess would "go shopping for groceries, medicine, if the children needed them, anything that they needed," and "Mr. Garland also bought the children clothing, birthday presents ... generally anything ... that they needed."

A number of payments were made pursuant to the decrees, and at the time of his death the decedent was in arrears on the required payments. An agent for the Maryland Parole and

Probation Department testified that the Department of Social Services grant was made subject to the understanding that when Garland made any payments pursuant to the paternity decree, these funds would be paid to the Social Services Department without any increase or decrease in the grant.

It was conceded by the agent that no demand for payment was ever made on Mr. Garland prior to his death, and that Mrs. Hess was never notified of the status of Mr. Garland's payments.

There was additional testimony by Mrs. Hess that there was a possibility that she and Mr. Garland might resume living together, but she conceded there were "a few little problems we had yet, and besides, he was living in Reisterstown." In any case, no date had been set for the resumption of their previous living arrangements.

In reviewing the propriety of the trial judge's action in denying a directed verdict or judgment n.o.v., we are required to resolve all conflicts in the evidence in favor of the plaintiff, to assume the truth of all credible evidence presented in support of the plaintiff, and to accept as true all inferences naturally and legitimately arising from the evidence which tend to support the plaintiff's right to recover. *B.P. Oil Corp. v. Mabe,* 279 Md. 632, 370 A.2d 554 (1977); *Fleming v. Prince George's County,* 277 Md. 655, 358 A.2d 892 (1976). If there is competent evidence, however slight, tending to support the plaintiff's right to recover, the case should be submitted to the jury and the motion for judgment n.o.v. denied. *Krol v. York Terrace Bldg., Inc.,* 35 Md. App. 321, 370 A.2d 589 (1977); *Keene v. Arlan's Dept. Store of Baltimore, Inc.,* 35 Md. App. 250, 370 A.2d 124 (1977).

Appellant urges that the trial court erred in denying appellant's motions for a directed verdict and by allowing the jury's verdict that the claimants were wholly dependent on the deceased to stand.

Maryland Code (1957, 1979 Repl. Vol.) Art. 101, Section 36(8)(e) provides: "In all cases, questions of dependency, in whole, or in part, shall be determined by the Commission in accordance with the facts in each particular case existent at

the time of the injury resulting in death of such employee. . . ." Appellant argues that this section requires the Commission to consider only the facts existent at the time of the injury and to determine from those facts whether the claimant was actually receiving the necessities of life from the decedent. Appellant further contends that at the time of Garland's injury and death, his children were not receiving the necessities of life from him, and that under these circumstances, the trial court should have granted its motion for directed verdict at the conclusion of the appellees' case or at the least should have granted its motion for judgment n.o.v. or for a new trial. The cases which follow this line of reasoning are represented by: *Bituminous Construction Co. v. Lewis,* 253 Md. 1, 251 A.2d 888 (1969); *Superior Builders v. Brown,* 208 Md. 539, 119 A.2d 376 (1956); and *Brooks v. Bethlehem Steel Co.,* 199 Md. 29, 85 A.2d 471 (1952).

There is, however, another line of cases that suggests that dependency may be found when the facts existent at the time of injury reveal that the claimant had in the past substantially received the necessities of life from the workman, that a temporary lapse had occurred in the workman's support of the claimant, and that a reasonable probability existed that the support of the claimant would resume in the near future. *Maryland House of Correction v. Jenkins,* 228 Md. 146, 178 A.2d 892 (1962); *C.W. Wright Construction Co. v. Brannan,* 217 Md. 397, 142 A.2d 574 (1958); *Harvey v. George J. Roche & Son,* 148 Md. 363, 129 A. 359 (1925); *State Industrial Accident Comm. v. Downton,* 135 Md. 412, 109 A. 63 (1919).

This theory of dependency evolved from *State Industrial Accident Comm., supra,* where the Court of Appeals first suggested that dependency could be established by a legal obligation to support "coupled with a reasonable probability that such obligation will be fulfilled." 135 Md. at 416. Later, in *Harvey v. George J. Roche & Son,* 148 Md. at 370, the Court of Appeals noted that where an interruption to regular support existed, the issue to be determined is "whether the interruption is only temporary or means an end to support."

The Court of Appeals in *State Industrial Accident Comm.*

*v. Downton, supra,* and in *Harvey v. George J. Roche & Son, supra,*

> recognized the possibility that there could be a question of "reasonable probability" in some circumstances. And in the latter case, in which the former was cited, it was said . . . that "a question of probability would, accurately speaking, arise only when an interruption to regular support is to be considered" and that the question of "whether the interruption is only temporary, or means an end to support, is one of probability," but because a question of probability did not arise in that case, it was unnecessary to decide whether the instructions there were erroneous. *See also Meyler v. Mayor & C.C. of Baltimore,* 179 Md. 211, 17 A.2d 762 (1941), where the phrase "reasonable probability" was used in connection with "an obligation to support." [228 Md. at 151.]

In *C. W. Wright v. Brannan, supra,* the same proposition of law was before the Court of Appeals after a lapse of more than a quarter of a century. In that case, the Court had the occasion to consider the question of probability of resumption of support in the foreseeable future as of the date of injury. A majority of the Court decided there was "no basis for a determination . . . [of] any reasonable probability of resumption of support. . . ." 217 Md. at 405.

In *Maryland House of Correction v. Jenkins, supra,* the Court of Appeals citing with approval *Merrill v. Penasco Lumber Co.,* 204 P. 72 (N.M. 1922) said:

> . . . [J]ust as the existence of the marital status does not of itself prove dependency, so the lack of actual support by the husband does not of itself negative dependency. The failure to support is only one circumstance for consideration. The reasons for it, the length of its continuance, the mutual attitude and means of the parties, the probable resumption of duty, and other similar matters may have a distinct bearing on the subject. If dependency were

> determined only by the fact of contribution to
> support, a wife and children might be dependent one
> week and cease to be the next according to the
> caprice of the husband and father. [228 Md. at
> 151-52.]

It is our function in this case to determine whether there was evidence legally sufficient to be submitted to the jury. We are convinced that there was. We conclude that based on the evidence in this case the question of dependency was a question of fact, not of law. There was evidence from which the jury might have found that the deceased after separation remained in the area at a known address and phone number; that he continued to be employed in the immediate area; that he regularly visited the children; that in addition to signing a paternity decree in which he obligated himself to pay support for the children on a monthly basis, he regularly purchased groceries, clothing, medicine and other needs of the children; that the deceased made regular payments on the order in the paternity cases from November 24, 1975 until February 3, 1976, though he was substantially in arrears when he died in December, 1976; that deceased did not marry anyone or arrange to live with another woman; that at the time of his death the deceased and Mrs. Hess were actively engaged in discussing a reestablishment of their family. These facts were sufficient to require the trial court to deny appellant's motion for directed verdict and to deny its motion for judgment n.o.v. or for a new trial.

In *Maryland House of Correction v. Jenkins, supra,* the Court of Appeals sustained a jury finding of dependency upon a deceased workman in a much weaker case factually. There the evidence showed that the decedent had been living with a paramour before his incarceration, had been quoted as saying that he intended to return to the paramour after his release, and had provided no support to claimants during his incarceration. The Court felt, based solely on a letter written to his wife, in which he expressed "love and concern" for his family, that an inference could reasonably have been drawn by the jury that the decedent would probably have supported the claimants when he was released from prison. The Court

cited with approval *LaSalle County Coal Co. v. Industrial Commission,* 356 Ill. 421, 190 N.E. 687 (1934) where it was stated:

> [D]ependency, once recognized and firmly established by regular contributions for support over a reasonable course of time, is not abruptly terminated by the temporary failure of the contributor to meet his obligations of support as they become due, in the absence of proof that the relationship has definitely ceased to exist.... [228 Md. at 152.]

The factual issue of dependency was fairly presented to the jury, and we find no error in the trial court's refusal to grant the appellants' motion for directed verdict or to grant their motion for judgment n.o.v. or for a new trial.

*Judgment affirmed.*
*Costs to be paid by appellants.*